## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA            *

                               *

v                                  *      Criminal Case: ELH-17-232
                                       (Related Civil Action: ELH-23-1123)
STANLEY DUNHAM, JR.,               *

                               *
                             ***

## MEMORANDUM OPINION

This case concerns a post-conviction petition filed under 28 U.S.C. § 2255 by defendant Stanley Dunham, Jr. *See* ECF 583, ECF 585. Pursuant to a Plea Agreement (ECF 354), Dunham entered a plea of guilty on July 17, 2018 (ECF 257) to a Superseding Information (ECF 352), charging him with possession with intent to distribute heroin. Under Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to a sentence of 72 months of imprisonment. ECF 354, ¶ 8.

At defendant's request, after the guilty plea the Court proceeded directly to sentencing. ECF 358. I imposed the agreed upon sentence, concurrent with two sentences defendant was serving in the Maryland penal system. *See* ECF 361; ECF 585 at 6.

Judgment was entered on July 19, 2018. ECF 361. Thereafter, defendant did not note an appeal. *See* Docket.[1] Accordingly, defendant's conviction became final on August 2, 2018. *See* Fed. R. App. 4(b)(1)(A).

Years later, on April 26, 2023, Dunham, who is now self-represented, filed a post-conviction petition under 28 U.S.C. § 2255. ECF 583. He claimed that his sentence should be

---

[1] In the Plea Agreement, the defendant waived many of his appellate rights. *See* ECF 354, ¶ 10.

vacated pursuant to the First Step Act of 2018, and so that he could "attend an out patient drug program." *Id.* at 5.

Upon initial review by me, the petition appeared untimely under 28 U.S.C. § 2255(f). Therefore, by Order of May 23, 2023 (ECF 84), I granted Dunham 28 days to supplement his post-conviction petition, to include grounds for equitable tolling. *Id.* at 2.

Dunham filed a supplement on June 9, 2023. ECF 585. There, he claims ineffective assistance of counsel because his lawyer failed to file an appeal, despite Dunham's alleged request. *Id.* at 3-4. And, defendant claims that he only recently learned of his lawyer's failure to note an appeal. *Id.* at 4.

I shall refer to ECF 583 and ECF 585 collectively as the "Motion." The government opposes the Motion. ECF 592. Dunham has not replied.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall dismiss the Motion as untimely and, in the alternative, I shall deny it.

## I.    Factual Background

Dunham was one of eleven defendants in this drug-trafficking case. He was initially charged in a Superseding Indictment filed on June 6, 2017. ECF 20-1. A Second Superseding Indictment was filed on August 1, 2017, containing seven counts. Defendant was named only in Count One, charging conspiracy to distribute and possess with intent to distribute one kilogram or more of a substance containing heroin; a substance containing fentanyl; and 500 grams or more of a substance containing cocaine. ECF 93.

Then, on July 17, 2018, the government filed a Superseding Information as to Dunham. ECF 352. On that date, defendant pleaded guilty to the offense of possession with intent to distribute heroin, in violation of 21 U.S.C. § 841. *See* ECF 352, ECF 354, ECF 357.

Under ¶ 6 of the Plea Agreement, the parties contemplated a final offense level of 27, after three deductions under § 3E1.1 of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines").  And, a pre-plea criminal history report reflected a criminal history category of V. *See* ECF 325-1.  Therefore, the advisory Guidelines called for a sentence ranging from 120 to 150 months of incarceration.  But, as noted, under Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to a sentence of 72 months.  ECF 354, ¶ 8.

According to the Statement of Facts included in the Plea Agreement, Dunham was involved in a conspiracy to possess and distribute large amounts of narcotics in Baltimore.  ECF 354, ¶ 6(a). Investigators confirmed defendant's involvement on May 11, 2017, when, after observing a suspected drug transaction between Dunham and a co-defendant, investigators stopped defendant and found 23.1 grams of heroin in his vehicle.  *Id.* at 4.  Dunham agreed that "it was reasonably foreseeable to him that members of the conspiracy would distribute" between one and three kilograms of heroin.  *Id.*

The transcript for the combined guilty plea proceeding and sentencing on July 17, 2018, is docketed at ECF 590.  At the Rule 11 portion of the proceeding, defendant was placed under oath. *Id.* at 3.  And, the transcript reflects that he was thoroughly advised of the terms of the Plea Agreement.  Of relevance here, the Court fully reviewed paragraph 10 of the Plea Agreement, titled "Waiver of Appeal."  *Id.* at 19-20.  It is a broad waiver.  Among other things, defendant waived his right to appeal his conviction.  *Id.* ¶ 10(a).  He also waived his right to appeal the sentence.  *Id.* ¶ 10(b).  Moreover, during the plea colloquy, defendant agreed with the accuracy of the factual summary in the Plea Agreement, and as presented by the prosecutor.  *Id.* at 33.

Moreover, at the conclusion of the sentencing, the Court advised the defendant that he had fourteen days from the entry of the Judgment to note an appeal.  *Id.* at 59.  Moreover, I directed

defense counsel to confirm contact with the defendant during the appeal period, in the event the defendant wanted to note an appeal.  *Id.*[2]  No appeal was filed.

Nevertheless, Dunham wrote multiple letters to the Court after his sentencing.  For example, he wrote to the Court on June 17, 2020, requesting information on federal laws governing sentence reduction.  ECF 480.  The Court responded the next day, and provided information about 18 U.S.C. § 3582(c)(1)(A), concerning "compassionate release."  ECF 481.  Between October 2022 and February 2023, defendant sent three more letters to the Court, asking for a suspension of the remainder of his sentence so that he could participate in a substance abuse treatment program provided through the Maryland Department of Health.  ECF 567, ECF 569, ECF 577.  The Court interpreted Dunham's letters as motions for compassionate release and either denied the motion without prejudice or clarified the prerequisites that defendant had to satisfy before the Court could consider such a motion.  ECF 568, ECF 579.

On April 7, 2023, defendant wrote to the Court asking for information about the First Step Act of 2018.  ECF 582.  A few weeks later, on April 26, 2023, Dunham filed the Motion, asking the Court to vacate his sentence "due to the 'First Step Act.'"  *Id.* at 4.  As discussed, I granted Dunham 28 days to supplement his Motion.  ECF 584.  The supplement followed on June 9, 2023. ECF 585.

## II.  Legal Standard

Section 2255(a) of Title 28 of the United States Code provides relief to a prisoner in federal custody only on specific grounds: "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States,' (2) 'that the court was without jurisdiction to impose such a sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4)

---

[2] Defense counsel is a seasoned attorney who was appointed to represent the defendant.

that the sentence 'is otherwise subject to collateral attack.'" *See Hill v. United States*, 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255); *see United States v. Hodge*, 902 F.3d 420, 426 (4th Cir. 2018); *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015); *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010).

Under § 2255, the petitioner must establish (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). But, "an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428). In order to prevail on a § 2255 motion, a defendant bears the burden of proving his grounds for collateral relief by a preponderance of the evidence. *See Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965).

The scope of collateral attack under § 2255 is narrower than on appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, 488, 519 (2016) (Alito, J., concurring) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). A failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 motion, unless the petitioner can demonstrate "cause and actual prejudice resulting from the errors of which he complains," or "actual innocence." *Pettiford*, 612 F.3d at 280 (citing *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999)); *see Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotations and citations omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Reed v. Farley*, 512 U.S. 339, 354 (1994) (stating that "the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Finch v. McKoy*, 914 F.3d

292, 298 (4th Cir. 2019) (discussing requirements for a claim of actual innocence); *United States v. Linder*, 552 F.3d 391, 397 (4th Cir. 2009).

Generally, the rule governing procedural default of claims brought under § 2255 precludes consideration of any contentions that "'could have been but were not pursued on direct appeal, [unless] the movant . . . show[s] cause and actual prejudice resulting from the errors of which he complains.'" *Pettiford*, 612 F.3d at 280 (quoting *Mikalajunas*, 186 F.3d at 492-93). Under the "cause and prejudice" standard, the petitioner must show: (1) cause for not raising the claim of error on direct appeal; and (2) actual prejudice from the alleged error. *Bousley*, 523 U.S. at 622; *see Dretke*, 541 U.S. at 393; *Massaro v. United States*, 538 U.S. 500, 505 (2003); *see also Reed*, 512 U.S. at 354 (stating that "the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Murray*, 477 U.S. at 496; *Frady*, 456 U.S. at 167-68.

In order to show cause for not raising the claim of error on direct appeal, a petitioner must prove that "some objective factor external to the defense such as the novelty of the claim or a denial of effective assistance of counsel" impeded their counsel's efforts to raise the issue earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *see Carrier*, 477 U.S. at 492 ("[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim."); *Mikalajunas*, 186 F.3d at 493 (movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel"). Additionally, the alleged error cannot simply create a possibility of prejudice, but must be proven to work to the petitioner's "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). Pursuant to the Supreme Court's ruling in *Carrier*, 477 U.S. at 494, prejudice does not support relief of a

procedural default in the absence of a showing of cause.  *See also Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).

The actual innocence exception "only applies in limited circumstances."  *United States v. Jones*, 758 F.3d 579, 583 (4th Cir. 2014).  Indeed, it must be "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ."  *Carrier*, 477 U.S. at 496.

In order to show "actual innocence," the petitioner "must demonstrate actual factual innocence of the offense of conviction, *i.e.*, that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent."  *Mikalajunas*, 186 F.3d at 494 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *see also Bousley*, 523 U.S. at 623.  Notably, the petitioner must meet this burden by clear and convincing evidence.  *Mikalajunas*, 186 F.3d at 494.  In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *Jones*, 758 F.3d at 583; *see Bousley*, 523 U.S. at 623.

As the Fourth Circuit has said, "[a] valid actual innocence claim 'requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.'"  *Finch*, 914 F.3d at 298 (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).  Moreover, a petitioner must "'demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice.'"  *Finch*, 914 F.3d at 298 (quoting *Teleguz v. Pearson*, 689 F.3d 322, 329 (4th Cir. 2012)).  It is an "exacting standard," based on a "'holistic judgment about all the evidence'. . . ."  *Finch*, 914 F.3d at 299 (quoting *House v. Bell*, 547 U.S. 518, 539 (2006)).

Notably, failure to raise on direct appeal a claim of ineffective assistance of counsel is not regarded as procedurally defaulted. *Massaro v. United States*, 538 U.S. 500, 509 (2003); *see United States v. Faulls*, 821 F.3d 502, 507-08 (4th Cir. 2016). Indeed, such claims ordinarily are not litigated on direct appeal.  Claims of ineffective assistance are cognizable on direct appeal "only where the record conclusively establishes ineffective assistance." *United States v. Baptiste*, 596 F.3d 214, 216 n.1 (4th Cir. 2010).  Rather, such claims are usually litigated in a § 2255 action to allow for development of the record. *Massaro*, 538 U.S. at 504-06; *United States v. Ladson*, 793 F. App'x 202 (4th Cir. Feb. 12, 2020) (per curiam).

Moreover, the Court is mindful that a self-represented litigant is generally "held to a 'less stringent standard' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Quintero v. Garland*, 998 F.3d 612, 634 (4th Cir. 2021) (same); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (per curiam) (same).

Pursuant to 28 U.S.C. § 2255(b), the court must hold an evidentiary hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief . . . ." *United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021); *see United States v. LeMaster*, 403 F.3d 216, 220-23 (4th Cir. 2005); *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004). Ordinarily, a district court has discretion as to whether to hold a hearing, but "a hearing is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record, or when a credibility determination is necessary to resolve the claim . . . ." *Mayhew*, 995 F.3d at 176-77. If the district court "denies relief without an evidentiary hearing," the appellate

court will "construe the facts in the movant's favor." *United States v. Akande*, 956 F.3d 257, 261 (4th Cir. 2020); *see also United States v. Turner*, 841 F. App'x 557, 559 (4th Cir. 2021) (same).

In my view, no hearing is necessary here, because the Petition is untimely.  But, even assuming that Dunham asked his lawyer to file an appeal, Dunham has not provided any grounds to support an appeal.  In other words, the alleged error is harmless.

## II.   Discussion

### A.  The Timeliness of the Motion

Section 2255(f) imposes a one-year period of limitations, within which petitioner must file his motion.  This one-year period begins on the latest of the following dates:  (1) the date on which the petitioner's judgment became final; (2) the date on which any unconstitutional, government-created impediment preventing the petitioner form filing this motion was lifted; (3) the date on which a newly asserted right was recognized by the Supreme Court and made retroactive on collateral review; or (4) the date on which the facts supporting the petitioner's claim for relief "could have been discovered through the exercise of due diligence.  28 U.S.C. § 2255(f)(1)-(4).

In his Motion, defendant explains that he directed his lawyer to file an appeal, but his lawyer failed to do so.  Moreover, he claims that, until recently, he had no knowledge that his appeal was not filed.  Petitioner does not claim that a government-imposed barrier prevented him from filing the appeal; from learning that the appeal was not filed; that the Supreme Court recognized a new right; or that relevant facts were previously unavailable to him.  Therefore, the applicable start date for defendant's one-year period is the date on which his judgment became final.  *See* 28 U.S.C. § 2255(f)(1).

The Court entered judgment on Thursday, July 19, 2018.  *See* ECF 361. Petitioner did not appeal his judgment.  Therefore, the one-year period began fourteen days after entry of judgment, *i.e.*, August 2, 2018, when the time to file a direct appeal expired. *See* Fed. R. App. Pro.

4(b)(1)(A)(i); *Clay v. United States*, 537 U.S. 522, 527 (2003) ("Finality attaches when [the Supreme Court] affirms a conviction on the merits on direct review or denies a petition or a writ of certiorari, or when the time for filing a certiorari petition expires.").

The one-year period for filing a motion under 28 U.S.C. § 2255 began on August 2, 2018. However, defendant's Motion was not filed until April 26, 2023—approximately 44 months after the expiration of the one-year period.  Therefore, the Motion is untimely.  And, in the absence of equitable tolling, dismissal is required.

Defendant argues that the one-year limitation should not apply in his case because his lawyer did not inform him that he had the option to file a § 2255 motion or that such a motion was due by August 2, 2019. *Id.* at 4.  This argument, however, is insufficient to invoke equitable tolling. *See United States v. Prescott*, 221 F.3d 686, 688 (4th Cir. 2000) ("[Section] 2255's limitation period is subject to equitable modifications such as tolling.").

Under *Holland v. Florida*, 560 U.S. 631 (2010), "a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace f. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  Petitioner does not satisfy these two requirements.

According to the Supreme Court, "the diligence required for equitable tolling purposes is reasonable diligence." *Holland*, 560 U.S. at 653 (internal quotation marks and citations omitted). To be sure, defendant wrote to the Court several times, seeking information or relief.  But, he "does not explain how he exercised diligence during the original limitations period." *Smith v. Warden of FCI Bennettsville*, JRR-22-3340, 2023 WL 3251411, at *5 (D. Md. May 4, 2023).

As noted, defendant first wrote to the Court in June 2020—almost two years after his judgment became final. *See* ECF 480.  He did not mention an appeal, or complain about his lawyer,

or reference any attempts at self-guided research, or communications with his attorney.  Because "Petitioner provides no details as to how his incarceration in a [State] correctional facility . . . prevented him from filing his federal petition or what actions he took to pursue his claims during this period," Petitioner has failed to show that he acted with reasonable diligence during the limitation period.  *See Higgins v. Maryland*, GJH-19-1665, 2020 WL 1331910, at *3 (D. Md. Mar. 23, 2020).

Even if the Court were to conclude that defendant satisfied the due diligence requirement, defendant's argument regarding his lack of legal knowledge, apparently due to his attorney's ineffectiveness, does not demonstrate the "extraordinary circumstances" required under the second prong.  It is well established that "ignorance of the law is not a basis for equitable tolling."  *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004); *see also Coston v. Campbell*, TDC-20-0087, 2022 WL 16553361, at *3 (D. Md. Oct. 31, 2022) ("Even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling.") (citing *Sosa*, 364 F.3d at 512); *see also Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir. 1991) (finding that petitioner's "unfamiliarity with the legal process" and "ignorance of [his] legal rights" did not warrant equitable tolling); *Strickland v. Crow*, 2022 WL 245521 (10th Cir. Jan. 27, 2022) ("[I]gnorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing." (internal quotations omitted), *cert. denied*, ___ U.S. ___, 142 S. Ct. 2877 (2022), *reh'g denied*, ___ U.S. ___, 143 S. Ct. 48 (2022).

Moreover, even if defendant's ignorance of the law could reasonably be attributed to his attorney's failure to educate him, "ineffective assistance of counsel ordinarily does not warrant equitable tolling." *United States v. Cole*, ELH-18-0167, 2023 WL 1472019, at *5 (D. Md. Feb. 2, 2023) (citing *Harris v. Hutchinson*, 209 F.3d 325, 331 (4th Cir. 2000)); *see also Rouse v. Lee*, 339 F.3d 238, 248–50 (4th Cir. 2003) ("[A]ttorney error is not an extraordinary circumstance."); *Diaz*

11

*v. United States*, WMN-12-3414, 2013 WL 709783, at *2 (D. Md. Feb. 26, 2013) (finding no basis for equitable tolling where petitioner claimed late filing was due to attorney's "failure to return [petitioner's] attempts at communication" because such "circumstances . . . are neither extraordinary nor demonstrate diligent pursuit of rights"); *but see United States v. Martin*, 408 F.3d 1089, 1096 (8th Cir. 2005) (finding equitable tolling appropriate where defendant's attorney "misrepresented the law, misrepresented the status of [defendant's] case, and retained possession of documents that were crucial to [defendant's] claim"); *Baldayaque v. United States*, 338 F.3d 145, 152–53 (2d Cir. 2003) (finding equitable tolling appropriate where attorney failed to file § 2255 petition after defendant instructed him to do so, never spoke or met with defendant, and did not do legal research on defendant's case).[3]

On the grounds advanced here, defendant is not entitled to equitable tolling. *See Allen v. United States*, WDQ-12-2260, 2013 WL 4495670, at *2 (D. Md. Aug. 16, 2013) (dismissing the § 2255 motion because defendant failed "to establish factors that warrant equitable tolling of the statute of limitations"); *Diaz*, 2013 WL 709783, at *1 ("[Petitioner] did not file the Motion until . . . eight months after the limitations period expired. Unless principles of equitable tolling apply, the Motion must be dismissed as untimely.").

Even if I were to consider the merits of the Motion, defendant would fare no better; he is not entitled to relief, as discussed below.

### B.  Ineffective Assistance of Counsel

Defendant claims he was denied effective assistance of counsel because his lawyer failed to file an appeal, despite defendant's alleged request. ECF 585 at 3-4.  Further, defendant asserts,

---

[3] As ECF 325-1 reflects, the defendant has a lengthy prior record.  He was not a newcomer to the criminal justice system.  It seems quire implausible that if, defendant asked his lawyer to file an appeal in July 2018, defendant would wait years to ascertain the status of the appeal.

*id.* at 4: "Only recently was I made cognizant that an appeal was not filed by my attorney, on my behalf." But, he has not submitted any evidence to support his claim, that he made such a request, such as his own Affidavit or one from his lawyer.

Dunham also contends that he "'did not sign an appeal waiver.'" ECF 585 at 4. However, defendant's Plea Agreement (ECF 354) contains a broad waiver of appeal (*id.* ¶ 10), and the Plea Agreement was, in fact, signed by defendant. *Id.* at 7. Critically, defendant does not identify the issues he sought to raise on appeal, nor does he explain why the issues would not have been subject to the broad appellate waiver in paragraph 10 of the Plea Agreement.

The Sixth Amendment to the Constitution, cited by defendant, guarantees a criminal defendant the right to the effective assistance of competent counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, 580 U.S. 100, 118 (2017). Ineffective assistance of counsel is a well recognized basis for collateral relief. *See generally Missouri v. Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

To mount a successful challenge under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88; *see Williams v. Taylor*, 529 U.S. 362, 390 (2000); *United States v. Palacios*, 982 F.3d 920, 923 (4th Cir. 2020); *United States v. Akande*, 956 F.3d 257, 260 (4th Cir. 2020); *United States v. Winbush*, 922 F.3d 227, 229 (4th Cir. 2019); *United States v. Hall*, 771 F. App'x 226, 227 (4th Cir. 2019) (per curiam); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017); *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017). First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 580 U.S. at 118; *Chaidez v. United States*, 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Winbush*, 922 F.3d at 229; *Powell*, 850 F.3d at

149; *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *United States v. Dyess*, 730 F.3d 354, 361 (4th Cir. 2013); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see also United States v. Richardson*, 820 F. App'x 225, 226 (4th Cir. 2020) (per curiam); *United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013). The petitioner must prove his claim by a preponderance of the evidence. *Mayhew*, 995 F.3d at 176; *Pettiford*, 612 F.3d at 277.

The first *Strickland* prong, known as the "performance prong," relates to professional competence. The petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688; *see Harrington v. Richter*, 562 U.S. 86, 104 (2011); *Richardson*, 820 F. App'x at 225; *Powell*, 850 F.3d at 149; *Hall*, 771 F. App'x 227. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

The Supreme Court has recognized that the "first prong sets a high bar." *Buck*, 580 U.S. at 118; *see also Powell*, 850 F.3d at 149. In *Padilla*, the Court stated, 559 U.S. at 371: "Surmounting *Strickland's* high bar is never an easy task." Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck*, 580 U.S. at 118 (citation omitted). Consequently, the performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)).

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687).  Notably, "the

*Strickland* standard must be applied with scrupulous care," because "the standard of judging counsel's representation is a most deferential one." *Richter*, 562 U.S. at 105; *see United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019). Indeed, "[k]eenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland*, 446 U.S. at 689); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Richter*, 562 U.S. at 104; *Richardson*, 820 F. App'x at 225-26; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).

Under the second *Strickland* prong, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 580 U.S. at 119; *Lafler*, 566 U.S. at 163; *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. However, a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

In this case, defendant entered a plea of guilty, pursuant to a Plea Agreement. Of relevance here, the plea process is regarded as "an essential aspect of the administration of criminal justice . . . ." *United States v. Lewis*, 633 F.3d 262, 269 (4th Cir. 2011). Thus, the Sixth Amendment right to counsel extends to the plea-bargaining process. *McMann v. Richardson*, 397 U.S. 749, 771 (1970); *United States v. Murillo*, 927 F.3d 808, 815 (4th Cir. 2019); *United States v. Hall*, 771 App'x 226, 227 (4th Cir. 2019) (per curiam); *see also Frye*, 566 U.S. at 140-44; *Lafler*, 566 U.S. at 162.

In *Hill v. Lockhart*, *supra*, 474 U.S. 52, the Supreme Court explained that, "where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness [and intelligence] of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (citation omitted). But, in assessing whether counsel's performance was deficient, courts adopt a "strong presumption" that counsel's actions fell within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Of import here, the prejudice prong of the *Strickland* test is "slightly modified" in the context of plea bargaining. *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988). In *Hooper*, the Fourth Circuit explained, *id.* (quoting *Hill*, 474 U.S. at 59): "When a defendant challenges a conviction entered after a guilty plea, [the] 'prejudice' prong of the [*Strickland*] test is slightly modified. Such a defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Accord Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000); *see also Richardson*, 820 F. App'x at 226.

*Hooper*, 845 F.2d 471, is illustrative. There, the defendant, who had a history of mental illness, pled guilty in a Virginia court to second-degree murder. *Id.* at 472. However, his lawyers failed to obtain a psychiatric evaluation before the defendant's entry of the guilty plea. *Id.* Hooper

16

subsequently filed a habeas corpus petition, which the district court denied. *Id*. On appeal, the Fourth Circuit noted that the "burden is on Hooper to establish a reasonable probability that if his lawyers had obtained a psychiatric report, he would have rejected the plea agreement" and gone to trial. *Id.* at 475.

The Fourth Circuit examined a psychiatric report obtained after the guilty plea against the background of the circumstances Hooper faced at the time he decided to plead guilty. The Court was not persuaded that the report provided evidence sufficient to establish a reasonable probability that Hooper would have declined the plea agreement and gone to trial, even if his counsel had obtained a psychiatric report at the time. *Id.* at 475-76. Although the Court concluded that the failure to obtain a psychiatric report fell below the objective standard of reasonableness established by *Strickland*, it was satisfied that Hooper was not prejudiced because there was no reasonable probability that the deficiency changed the outcome of the proceeding.

Notably, the defendant has the burden to establish a reasonable probability that, but for counsel's deficient performance, he would not have entered a plea of guilty. *Murillo*, 927 F.3d at 817.  As discussed below, there is no basis on which to find a reasonable probability that defendant would have rejected the Plea Agreement if his lawyer had done anything differently.  For one thing, pursuant to Rule 11(c)(1)(C), the government agreed to a sentence well below the bottom of the Guidelines.  Dunham's bald assertion that he "would have taken this case to trial" if he had "known all the facts," ECF 38 at 9, is not sufficient, particularly given the significance of the oath defendant took at the rearraignment, discussed next.

A guilty plea is a "waiver of [a defendant's] right to trial before a jury or a judge." *Brady v. United States*, 397 U.S. 742, 748 (1970). It is "a grave and solemn act . . . ." *Id.*  Therefore, in order for a guilty plea to be valid, it must be voluntary.  *Id.*  And, "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness

of the relevant circumstances and likely consequences." *Id.*; *see Bradshall v. Stumpf*, 545 U.S. 175, 183 (2005) (same). Thus, a defendant's plea of guilty must reflect an "intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

A plea cannot be "voluntary in the sense that it constituted an intelligent admission . . . unless respondent received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). However, the Supreme Court clarified in *Marshall v. Lonberger*, 459 U.S. 422, 436 (1983), that "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Marshall*, 459 U.S. at 436 (1983) (quoting *Henderson*, 426 U.S. at 647) (internal quotations omitted).

Of import here, a defendant is "bound," absent clear and convincing evidence to the contrary, "by the representations he made under oath during a plea colloquy." *Fields v. Attorney Gen. of Md.,* 956 F.2d 1290, 1299 (4th Cir. 1992); *see Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977); *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005). Indeed, "a defendant's solemn declarations in open court affirming a [plea] agreement . . . 'carry a strong presumption of verity.'" *Lemaster*, 403 F.3d at 221 (quoting *Blackledge*, 431 U.S. at 74). Therefore, conclusory allegations in a § 2255 petition that are contrary to testimony provided at a Rule 11 hearing are "palpably incredible and patently frivolous or false." *Lemaster*, 403 F.3d at 222. As the Fourth Circuit has explained, "courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." *Id.*; *see also Blackledge,* 431 U.S. at 74; *White*, 366 F.3d at 295-96; *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003).

The Fourth Circuit has acknowledged that, on post-conviction, a defendant who has pled guilty "has an incentive to claim, in retrospect, that the result of the plea process would have been different regardless of whether that claim is, in fact, true." *Murillo*, 927 F.3d at 815; *cf. Lee v. United States*, 582 U.S. 357, 369 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies."). Therefore, "to prevent criminal defendants with bargainer's remorse, from simply claiming they would not have taken a deal but for a bit of bad advice," the defendant must "provide evidence of [his] sincerity." *Murillo*, 927 F.3d at 816. In particular, the defendant "must point to evidence that demonstrates a reasonable probability that, with an accurate understanding of the implications of pleading guilty, he would have rejected the deal." *Id.* Here, defendant does not "point to evidence" that undermines his knowing and voluntary decision to plead guilty based on a complete "understanding of the implications of pleading guilty . . . ." *Id.*

In the context of a plea bargain, "the defendant is the master of the outcome." *Murillo*, 927 F.3d at 815. Therefore, "[t]he prejudice analysis in the context of the plea-bargaining process requires a fact-based evaluation of the weight of the evidence." *Id.* at 815. The "plea agreement language and sworn statements must be considered in their context[.]" *Id.* at 817; *see Lemaster*, 403 F.3d at 221-22; ECF 45-1 at 38-39.

Defendant knowingly and voluntarily admitted to possession with intent to distribute heroin. Any attempt to dispute that assertion is groundless.

### B. The First Step Act of 2018

Defendant asks the Court to vacate his sentence based on the First Step Act of 2018. ECF 583 at 4-5. However, he does not provide a factual basis or cite to a specific provision of the First Step Act to support his request for relief. And, to my knowledge, defendant is not eligible for relief under any of the sentencing reforms established by the First Step Act.

In July 2018, defendant was convicted under 21 U.S.C. § 841(a) of possession with the intent to distribute controlled substances. The penalties associated with § 841(a) violations are described in 21 U.S.C. §§ 841(b)(1)(A), (B), and (C). In 2018, the First Step Act modified the minimum and maximum penalties under §§ 841(b)(1)(A) and (B) for defendants with prior felony drug convictions. *See* First Step Act of 2018, Pub. L. No. 115-015, 132 Stat. 5194, 5220. Dunham's offense, however, was subject to the penalties under 21 U.S.C. § 841(b)(1)(C), which was not modified by the First Step Act.  Therefore, the First Step Act's amendments to 21 U.S.C. § 841 do not affect Petitioner's sentence.

The First Step Act also made retroactive the amendments in Sections 2 and 3 of the 2010 Fair Sentencing Act, via resentencing.  *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, 2372. But, defendant's offense is not subject to the penalties under any of the affected statutes.

Defendant is certainly entitled to file a motion for compassionate release, under 18 U.S.C. § 3582(c)(1)(A).  But, I decline to construe the § 2255 motion as a motion for compassionate release.

### III. Conclusion

For the foregoing reasons, I shall dismiss the Motion as untimely or, in the alternative, deny it.

### IV.  Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant as to a post conviction claim.

A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). In other words, unless a COA is issued, a

petitioner may not appeal the court's decision in a § 2255 proceeding. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, 580 U.S. 100, 115 (2017). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

As indicated, a COA may issue only if the defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Defendant has not made a substantial showing of the denial of his constitutional rights.  Therefore, I decline to issue a COA.[4]

An Order follows, consistent with this Memorandum Opinion.


Date:   November 21, 2023                          _____/s/_____
                                                   Ellen L. Hollander
                                                   United States District Judge

---

[4] The denial of a COA by the district court does not preclude defendant from seeking a COA from the appellate court, *i.e.*, the United States Court of Appeals for the Fourth Circuit.